THOMAS J. SHEIBLEY, APPELLANT, V. FRANKLIN D. FALES, APPELLEE.

FILED MAY 21, 1908.   No. 15,365.

1. **Libel and Slander:** WRITING CONSTRUED. Defendant published a written statement that plaintiff had procured perjured statements concerning a candidate for congress and had circulated a base and slanderous attack on said candidate's character; that the animus of said attack originated in a case wherein said candidate had appeared as attorney against plaintiff; that said action was prosecuted by Dixon county to recover fees plaintiff had not accounted for as county clerk, and that ever since the termination of said case he had been active in originating and circulating false and malicious reports attacking the character of said attorney. *Held,* Said article did not directly or by imputation charge plaintiff with embezzlement, perjury or subornation of perjury.

2. ———: PLEADING. The defendant in a civil action against him for libel may, where the alleged libel is specific, answer that the charge is true; but, where the charge is in general terms, the answer must allege the facts upon which he relies to establish the truth of the charge.

3. ———: ———. Generally an answer justifying the publication of

an alleged libel on the ground that the statements made are true is specific enough if it gives the plaintiff sufficient notice of what defendant will attempt to prove.

4. ————: ————. After verdict, an answer in a libel suit, treated by the parties and the trial judge as adequate, will not be held bad.

5. **Trial**: BURDEN OF PROOF. If the publication of a libel actionable *per se* is admitted, and justification pleaded, the burden of the issues is on the defendant, and he has the right to first produce his evidence, and to open and close the arguments.

6. **Appeal**: ARGUMENTS OF COUNSEL: DISCRETION OF COURT. "It is within the discretion of the trial court to limit the time for arguments to the jury, and an order so limiting time presents no question for review, unless it is made to appear that the arguments were thereby unduly restricted, and that the time allotted to the complaining party was consumed." *Dixon v. State*, 46 Neb. 298.

7. **Trial**: INSTRUCTIONS. An instruction is not necessarily prejudicially erroneous because it is obscure, where another instruction on the same point is clear and correct.

8. **Appeal**: INSTRUCTIONS: HARMLESS ERROR. In an action for the publication of an article libelous *per se*, defendant's belief that his said statements are truthful will not be received in mitigation of damages; and an instruction that the jury consider the evidence tending to prove defendant's belief in the truth of his statements as in mitigation of damages is erroneous, but, if the jury find generally for defendant, such an instruction is error without prejudice.

9. **Libel and Slander**: INSTRUCTIONS. If the court in a suit for libel instructs the jury that defendant, in order to justify, must prove the truth of the statements contained in the alleged libel, and that in publishing the same he acted without malice, from good motives and for justifiable ends, it is not error to further instruct the jurors to consider whether defendant had good ground to believe and did believe the statements he made were true.

10. ————: EVIDENCE. The fact that defendant did not personally investigate the truth of the charges made by him against plaintiff will not conclusively establish his liability in a libel suit based on those statements.

11. **Evidence**: JUDICIAL RECORDS. A judicial record, if properly certified, is admissible to prove its own existence.

12. ————: JUDGMENT. A judgment in favor of a county against its clerk for fees improperly retained by him as such officer may

be introduced in evidence in any subsequent action between the judgment defendant and a resident taxpayer of said county, for the purpose of proving the fact of said shortage, when that fact is in issue.

13. **Appeal:** VERDICT: EVIDENCE. Contradictory testimony submitted to a jury will not be weighed in this court to ascertain which side produced the greater weight of evidence; but the verdict will be sustained if it is supported by sufficient competent evidence.

14. ——: HARMLESS ERROR. The evidence and the instructions in this case considered, and *held* not to exhibit prejudicial error sufficient to justify this court in reversing the judgment of the district court.

APPEAL from the district court for Dixon county: GUY T. GRAVES, JUDGE. *Affirmed.*

*W. V. Allen* and *W. E. Gantt,* for appellant.

*J. J. McCarthy, W. D. McCarthy* and *John V. Pearson,* contra.

ROOT, C.

Some years since plaintiff became involved in litigation with Dixon county over a claim made by him for services rendered as its clerk, and a counterclaim made against him for fees collected as such officer, and alleged to have been illegally retained. In 1898 plaintiff was defeated in that action, and in March, 1901, this court affirmed said judgment.

J. J. McCarthy, an attorney residing in Ponca, plaintiff's home, was employed to assist the county attorney in said litigation, and later became a candidate for congress. In November, 1901, plaintiff secured three affidavits, from as many persons, containing statements reflecting seriously on McCarthy's character, and during the summer and fall of 1902 actively published their contents throughout the congressional district wherein McCarthy and plaintiff resided. Defendant was chairman of McCarthy's congressional committee. He learned of plaintiff's conduct, made an investigation of the facts, secured copies

of the affidavits in plaintiff's possession, and procured counter affidavits from the persons who had signed and sworn to the ones used by plaintiff. The counter affidavits contained statements that affiants did not know or understand the contents of the affidavits given by them to plaintiff, and that the alleged facts therein stated were untrue. A few days before election defendant wrote and published the following article: "The republican congressional central committee has been informed that a base, slanderous attack is being made by our opponents on the character of Hon. J. J. McCarthy in these closing days of the campaign. The committee have carefully and fully investigated the statements being circulated and know them to be false in every detail; that they have been prepared for their supposed political effect, and are being used in an attempt to estrange voters from the republican candidate, and to promote the interest of the fusion nominee. This committee is in possession of counter affidavits showing conclusively that all of the charges against our candidate are absolutely false. J. J. McCarthy has led a clean and honorable life in this district for twenty years, and no breath of suspicion as to his morality was ever hinted until his political enemies in their desperation, knowing his strength with the people, conceived the idea of procuring perjured statements, with the hopes of thereby injuring his candidacy. Every fair-minded man will condemn this contemptible method of attack, and every lover of justice and fair play will register his protest against this outrage. The animus of this attack originated in a case in which J. J. McCarthy was employed to assist the county in an action brought to recover fees belonging to Dixon county, which T. J. Sheibley (meaning the plaintiff), as county clerk, failed to account for. This case is reported in 61 Neb. 409, and since which time T. J. Sheibley (meaning the plaintiff) has been active in originating and circulating false and malicious reports attacking the character of the republican candidate for congress in this district."

Plaintiff then instituted this suit to recover damages for the publication of said article. The only innuendoes in the petition are the two copied above, but it was generally alleged that the publication was false and malicious and made of and concerning plaintiff. Defendant answered, admitting the publication of the writing, "and alleges that the same is true, and that the defendant published the same with good motives and for justifiable ends." To the answer plaintiff replied: "Denies that the libelous matter set out in the petition is true, and further denies that the defendant published the same with good motives and for justifiable ends." Upon the trial plaintiff demanded that he be given the opening and closing of the case. The court denied the request, and thereupon plaintiff asked that he be permitted in the first instance to introduce testimony for the purpose of showing the circulation of the libelous article and the amount of his damages. This request the court also refused. Defendant then assumed the laboring oar, and the trial continued throughout two days. Immediately after the close of the evidence plaintiff moved "to strike out all the evidence in this case introduced by the defendant and direct a verdict for plaintiff," for the reason that there was no evidence showing the truthfulness of the libelous matter, and that the evidence did not tend to establish good motives on the part of defendant in publishing the alleged libel. The motion was overruled. The court limited the argument of counsel to 30 minutes on a side. Plaintiff's counsel moved for a modification of this order. The motion was overruled, and thereupon counsel waived argument because of the alleged insufficiency of time to present plaintiff's case to the jury. A verdict was returned for defendant, and plaintiff has appealed, assigning 94 alleged errors of the trial court. Not all the errors assigned are argued in the brief, and we will only consider those referred to in the written argument.

1. It is insisted that the answer does not state a defense to the petition, because the attempted justification

is a statement of the pleader's conclusion, and not an allegation of fact; that the alleged libel contains five distinct charges: (1) Making a base, slanderous attack on McCarthy's character; (2) circulating false statements for political effect; (3) procuring perjured statements for the purpose of injuring McCarthy's candidacy; (4) failure to account for fees while holding an office of public trust; (5) making such charges for personal revenge; that, to justify, defendant must have alleged with particularity every fact essential to sustain the truth of all said charges, and with a certainty sufficient to uphold an indictment. We do not think that the article should be construed as counsel interpret it. To us it seems to charge that plaintiff, from a desire to be revenged on McCarthy and defeat him for congress because that attorney appeared against him in his litigation with Dixon county, procured affidavits containing untruthful charges concerning McCarthy, and circulated them in the congressional district where McCarthy resided; that Dixon county had recovered a judgment against plaintiff for fees he had earned as clerk of said county and failed to account for. The article does not directly or indirectly charge plaintiff with embezzlement. The statement is not made that plaintiff committed perjury or subornation of perjury, nor does it appear from any allegation in the petition, or a reasonable construction of the language used in the article referred to, that an oath had been falsely taken or procured in any judicial proceedings, and therefore it does not indirectly charge any one with perjury or subornation of perjury. *Powers v. Miller*, 2 McCord (S. Car.), *220. Section 132 of the code provides: "In the actions mentioned in the last section, the defendant may allege the truth of the matter charged as defamatory, and may prove the same, and any mitigating circumstances to reduce the amount of damages, or he may prove either." The sufficiency of an answer justifying a publication, in an action for libel, depends upon whether the charge in the petition is general or specific. Where the charge is

specific, it is sufficient to state that the alleged defamatory words set forth in the petition are true. Where the charge is general, the answer must state facts which show that the defamatory words are true. And, generally, if the answer gives the plaintiff sufficient notice of what defendant will attempt to prove, it is sufficient. *McLaughlin v. Cowley,* 127 Mass. 316; *Dever v. Clark,* 44 Kan. 745; *Fenstermaker v. Tribune Publishing Co.,* 12 Utah, 439, 35 L. R. A. 611; *Hauger v. Benua,* 153 Ind. 642; *Stark v. Publishers Knapp & Co.,* 160 Mo. 529, 61 S. W. 669; *Kuhn v. Young,* 78 Tex. 344, 14 S. W. 796; *Myers v. Longstaff,* 14 S. Dak. 98. Plaintiff did not ask to have the answer made more definite and certain, and was ready with, and introduced, his evidence to show that the statements he circulated were true. Counsel objected to the introduction of a transcript of the proceedings in the case of *Sheibley v. Dixon County, supra,* as incompetent, irrelevant and immaterial, and moved to have it stricken from the record because the facts upon which it was based were not pleaded in the answer. At the close of taking testimony plaintiff's counsel also asked to have all evidence introduced by defendant stricken from the record, not because the answer was inadequate, but because the evidence itself did not make out a defense to plaintiff's case. Now, if the petition is definite concerning one branch of the case, it is that the libel charged plaintiff with failing to account to Dixon county for fees, that he was sued therefor and judgment rendered against him, and clearly an allegation in the answer that those statements were true was certain enough. None of plaintiff's requests to charge the jury intimate he was claiming that the allegations in the answer did not state a defense to the petition. One ground in the motion for a new trial is that the answer did not state a defense to the petition, but we think, unless the answer can be said to be totally insufficient, that objection came too late in said motion. After verdict, an answer treated by the parties

54

and the trial court as a sufficient plea of justification, will not be held bad on appeal (*Henderson v. Fox*, 83 Ga. 233, 9 S. E. 839), and we add it will be treated sufficient on a motion for a new trial.

2. Counsel for plaintiff argue that they had the right to open and close the case both as to evidence and argument. The court did not err in giving defendant the opening and closing. We held in *Sheibley v. Fales*, 75 Neb. 823, at the solicitation of plaintiff on the first appeal, that the burden was on the defendant, and that holding rules this case. Independent of our first decision herein, the trial court was correct. Counsel refer to the opinion of Mr. Justice MAXWELL, in *Omaha & R. V. R. Co. v. Walker*, 17 Neb. 432, as sustaining their contention that, where damages claimed are unliquidated, the plaintiff bears the burden of that issue. The opinion referred to was written in a condemnation case where pleadings are not required, and the amount of damage is the only issue for determination. In that case the landowner would have been defeated, in the absence of proof that he had been damaged by the taking of his property. In the instant case special damages were not claimed, and plaintiff, on the pleadings without any evidence, was entitled to a verdict. Except as directed by statute, the right to open and close in the trial of a case is a matter of practice within the control of the trial court, and its ruling, in the absence of an abuse of discretion, is not subject to review. In considering the subject Mr. Justice Frazer states that in England there was at one time much confusion on this subject, and that the *nisi prius* cases were confused and inharmonious in regard thereto; that finally, in 1845, in the court of Queen's Bench, after mature consideration, in *Mercer v. Whall*, 5 A. & E., n. s. (Eng.) 447, the rule was determined to be that the plaintiff should begin "when he has anything to prove, either as to the facts necessary for his obtaining a verdict, or as to the amount of damage to which he conceives the proof of such facts may entitle him." American courts and text-writers have

frequently adopted the reasoning of the English court, but the code in Nebraska has fixed an arbitrary standard to guide the courts in this particular, and taken from them any discretion they otherwise might possess. "The party who would be defeated, if no evidence were given on either side, must first produce his evidence. *. * * In the argument, the party required first to produce his evidence shall have the opening and conclusion." Code, sec. 283. The burden of the issues was on defendant, and he had the right to open and close the argument. *Judah v. Trustees of Vincennes University,* 23 Ind. 274; *Tull v. David,* 27 Ind. 377; *Heilman v. Shanklin,* 60 Ind. 424; *McCoy v. McCoy,* 106 Ind. 492, 7 N. E. 188; *Stith v. Fullinwider,* 40 Kan. 73; *Zweibel v. Myers,* 69 Neb. 294.

3. Complaint is made that counsel were limited to 30 minutes' argument on a side. We do not approve this ruling of the trial court. Courts are maintained to administer and promote justice. Argument is often as essential as evidence to insure an intelligent verdict, responding to the facts and law in a case. In the instant case 13 witnesses testified, and two days, including one night session, were given over to the introduction of the evidence. The evidence was conflicting, and but few attorneys are so gifted with the power of analysis and concentration as to be able to properly present to a jury that testimony in one-half an hour. However, counsel for plaintiff refused to argue at all, and specifically waived argument for the alleged reason that they could not properly do so in the time alloted by the court. We are of opinion that they thereby waived any possible error in the court's order. We have twice held in felony cases that a limit of time for argument is not erroneous unless it is made affirmatively to appear in this court that the time allotted was consumed. *Hart v. State,* 14 Neb. 572; *Dixon v. State,* 46 Neb. 298; *Yeldell v. State,* 100 Ala. 26, 46 Am. St. Rep. 20, and excellent monographic note of Prof. Freeman, p. 23 *et seq.*

4. Counsel say: "The court erred in overruling appel-

lant's motion, made at the end of the taking of testimony, for an instruction submitting the case to the jury on the question of damages." They argue that the answer did not state a defense, and that the evidence did not justify the alleged libel, nor demonstrate that the publication was made with good motives and for justifiable ends. A sufficient answer is that the motion is silent concerning the insufficiency of the answer, and the evidence, if believed by the jurors, justified the publication of the article. The truth of the statements made by the respective parties and defendant's motives in publishing the article were for the jurors, and not the court, to pass upon.

5. Counsel complain of instructions numbered 1, 4, 5, 7 and 8 because of the alleged insufficiency of the answer. Having held that plaintiff was not in position to complain of any deficiencies in the answer, it is not necessary to further notice this complaint.

It is also urged that the second instruction of the court was erroneous in submitting the libelous character of the publication to the jury. It is as follows: "You are instructed that any written or printed statements which falsely and maliciously charge another with the commission of a crime is libelous. Language alleged to be libelous is to be construed in its ordinary and proper sense, and the question is whether the language, when so construed, conveys, or is calculated to convey, to persons reading it a charge of crime." The instruction was unnecessary, but it could not have prejudiced plaintiff. It purports to be an abstract proposition of law, but the jurors are not told to find for defendant, unless they found that the publication was libelous within the definition given by the court. The next succeeding instruction given informs the jury that the article set forth in the petition is libelous; that the law presumes it is false and was published maliciously; and that thereby plaintiff has been damaged. The case will not be reversed because the second instruction was given. Code, sec. 145; *Bingham v. Hartley,* 44 Neb. 682.

The seventh instruction is attacked because it instructs the jurors that, if defendant was acting as chairman of the congressional committee at the time of the publication, and in good faith published the defense of McCarthy, believing it to be true, then the jury, if they found the publication to be false and untrue, might take the fact that defendant believed his statement to be true as evidence of good motive and in mitigation of damages; and it is argued that, if plaintiff is entitled to recover, his damages can be compensatory only, and evidence in mitigation of damages will not be received. As the jury found for the defendant, this instruction, which we do not approve, could not have prejudiced plaintiff. *Gullion v. Traver,* 64 Neb. 51. The same criticism is made concerning the eighth instruction, and, for the reason that the verdict was for defendant, we hold this instruction was not prejudicially erroneous.

The tenth instruction, relating to the measure of damages, is criticised. It is as follows: "If you find for plaintiff, in cases of this kind the law presumes that plaintiff has suffered damages, the amount thereof being left to the sound discretion of the jury, and you are instructed that it is your duty to assess such amount as will compensate plaintiff fully for damages sustained, taking into consideration all the circumstances in evidence, and no witness need testify to any particular or specific acts." Objection is made to the last sentence because it is said the jury might infer that, unless some witness testified to damages, plaintiff ought not to recover. We do not agree with counsel. The words would benefit rather than prejudice plaintiff.

Instruction numbered 1, requested by defendant and given by the court, is excepted to. Thereby the jurors were charged that the defendant might, for the purpose of disproving malice, "show the foundation on which he bases the charge made by him against the plaintiff, and that he believed, and had reasonable grounds to believe, that the charge made by him was true, and the facts and circum-

stances which induced that belief, but such evidence is to be considered solely for the purpose of determining the question of the motives and good faith of the defendant." Now, the foundation on which defendant based his charge against plaintiff was that the stories plaintiff was circulating against McCarthy were false, and that plaintiff was impelled in his said attacks by a desire for revenge, and, taking that view of the case, this instruction was not bad. We do not think it amounts to instructing the jury that evidence that defendant believed said statements to be true would be received to disprove malice on his part.

Counsel for plaintiff say their third instruction should have been given. We think not. It would inform the jurors: "If the defendant had an opportunity to personally examine the facts with reference to any statements he claims plaintiff circulated against J. J. McCarthy, but did not do so, and uttered and published the libel in suit without making such investigation, he is liable in this case, and your verdict should be for the plaintiff." This instruction ignores the fact that all the statements concerning McCarthy might have been false and defendant convinced of their untruth without a "personal investigation," and restricts the jury, in considering defendant's motives and good faith, to the one fact referred to in the instruction, and it was properly refused.

The fourth instruction requested by plaintiff charged the jurors to ignore all of defendant's evidence and return a verdict for plaintiff. Comment is unnecessary to demonstrate its impropriety.

6. Counsel urge that the court erred in admitting in evidence a transcript of the proceedings in *Sheibley v. Dixon County, supra,* and argue that the judgment in favor of the county in that case does not prove in the case at bar that Sheibley was ever short in his accounts with that county. Counsel cite cases where the courts have held that the record of plaintiff's conviction of a crime could not be received against him in a civil action to prove that he had committed that offense. The transcript

was properly admitted to prove the existence of the litigation and its termination. 2 Elliott, Evidence, sec. 1525; *Littleton v. Richardson*, 34 N. H. 179, 66 Am. Dec. 759. We are of opinion, also, that the judgment was properly received to establish the fact that Sheibley was short in his accounts with Dixon county. Defendant was a resident of that county at the time said judgment was rendered. The litigation between Sheibley and the county originated in a claim filed by Sheibley with the county commissioners. From a decision in that case favorable to plaintiff, Fales, as a taxpayer, could have appealed to the district court. In the district court a counterclaim for fees illegally retained by Sheibley was filed by the county, and it recovered judgment thereon. If the county had been defeated on its counterclaim and a judgment had been rendered in favor of plaintiff, defendant herein, as a taxpayer, would in some degree have been called upon to contribute to the payment of that judgment. Furthermore, a taxpayer has such an interest in the finances of the county as to give him cause for action, acting in his own behalf and that of all other taxpayers, to conserve its property, and in a proper case to recover judgment in its favor, when its officials charged by law with attending to its affairs negligently and corruptly refuse so to do. *Frederick v. Douglas County*, 96 Wis. 411; *Quaw v. Paff*, 98 Wis. 586; *Shepard v. Easterling*, 61 Neb. 882; *Cathers v. Moores*, 78 Neb. 17; *Whedon v. Lancaster County*, 80 Neb. 682. Under all the circumstances, we think there was such a privity between the county and defendant as entitled him to introduce the judgment as proof of the facts it established between Sheibley and Dixon county. *Harmon v. Auditor of Public Accounts*, 123 Ill. 122, 5 Am. St. Rep. 502; *Bear v. Commissioners*, 122 N. Car. 434, 65 Am. St. Rep. 711; *Cannon v. Nelson*, 83 Ia. 242; *Hill v. Bain*, 15 R. I. 75, 2 Am. St. Rep. 873; *Owens v. City of South Omaha*, 2 Neb. (Unof.) 466. The evidence is not very satisfactory that Fales was a taxpayer in Dixon county, but he was, and had been for a number of

years, a resident therein, and had held the office of county judge some five years, and we think it hardly possible he was not taxed in some amount. Neither was objection made to the introduction of the transcript on the ground that Fales was not a taxpayer.

7. Finally, it is argued at length that the evidence does not support the verdict because it does not establish that the charges against McCarthy were untrue. It would not interest any one other than the litigants to comment at length on the evidence on this point. McCarthy under oath denied in detail the truth of those statements, and there were corroborating circumstances appearing in the record, which strengthened his testimony. The jury evidently believed McCarthy, rather than those who contradicted him, and we are bound by the verdict in that regard. It is also claimed that plaintiff was privileged in circulating his libel on McCarthy because he was simply trying to defeat a candidate for congress. A candidate for public office may be freely criticised, but a false charge of facts amounting to moral turpitude is libelous, whether published concerning a private citizen or a candidate for office. *Sweeney v. Baker,* 13 W. Va. 158, 31 Am. Rep. 757; *Farley v. McBride,* 74 Neb. 49. Aside from the time limit placed on the argument, this case seems to have been fairly tried by the district court. The other errors that have crept into the record were not prejudicial to plaintiff, and we think that the judgment of the district court should be affirmed; and we so recommend.

FAWCETT and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.